IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| THOMAS LEONARD BERRY, <br><br> Plaintiff, <br> v. <br><br> WALLACE; DERKSON; GARIBAY; and LOBERG, <br><br> Defendants. | Case No.: 6:24-cv-00499-AN <br><br> OPINION AND ORDER |

Plaintiff Thomas Leonard Berry, who is self-represented, brings this action pursuant to 42 U.S.C. § 1983 against defendants Wallace, Derkson, and Garibay (together, "County defendants") and defendant Dr. Lance Loberg, asserting violations of his Eighth Amendment rights.[1] Defendants filed two motions for summary judgment—one by County defendants and one by defendant Loberg. Plaintiff responded in opposition to defendants' motions and, in turn, filed a motion for additional discovery under Federal Rule of Civil Procedure 56(d). No party has requested oral argument and, having reviewed the parties' filings, the Court finds that oral argument will not help resolve this matter. *See* Local R. 7-1(d). For the reasons stated below, defendants' motions are GRANTED, and plaintiff's motion is DENIED.

## LEGAL STANDARDS

**A.    Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Materiality

---

[1] Although plaintiff asserts claims under the Eighth Amendment, claims related to conditions of confinement brought by pre-trial detainees are rooted in the Fourteenth Amendment. *See Lolli v. Cnty. of Orange*, 351 F.3d 410, 418 (9th Cir. 2003). Nonetheless, the Court's analysis under the Fourteenth Amendment draws heavily on the standards articulated in Eighth Amendment caselaw. *Id.* at 419.

1

is determined with reference to the substantive law and material facts are those which might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) ("A mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party.").

The moving party has the initial burden of establishing the bases for its motion and identifying the portions of the record that demonstrate the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, if the non-moving party bears the burden of proof at trial, the moving party is not required to produce evidence disproving each element of the non-moving party's case. *Id.* at 325. Instead, the moving party need only show an absence of evidence supporting the non-moving party's case. *Id.*; *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Because all the evidence of the non-movant is to be believed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

Relief from summary judgment may be granted under Federal Rule of Civil Procedure 56(d) where the non-moving party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d) addresses premature summary judgment motions, where the non-moving party has not had a fair opportunity to conduct discovery prior to filing its opposition. *See Celotex*, 477 U.S. at 326. To defer a summary judgment decision under Rule 56(d), the non-movant "must identify by affidavit the specific facts that further discovery would reveal[] and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006).

**B.    Self-Represented Litigants**

Pleadings filed by self-represented litigants "are held to a less stringent standard than those drafted by lawyers." *Graves v. Nw. Priority Credit Union*, No. 3:20-cv-00770-JR, 2020 WL 8085140, at *2 (D. Or. Dec. 12, 2020) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "In cases involving a [self-represented] plaintiff, the court construes the pleadings liberally and affords the plaintiff the benefit of any

doubt." *Kali v. Bulk Handling Sys.*, No. 6:18-cv-02010-AA, 2019 WL 1810966, at *4 (D. Or. Apr. 23, 2019) (citing *Wolfe v. Strankman*, 392 F.3d 358, 392 (9th Cir. 2004)).

## BACKGROUND

### A.    Factual Background

Plaintiff was incarcerated pre-trial at Marion County Jail from September 7, 2023, to July 30, 2024. Abraham Decl. ¶ 5. During intake, defendant Wallace completed a 68-question booking assessment related to plaintiff's medical state and needs at the time. *Id.*, Ex. D, at 37-40.[2] The assessment includes a nursing note placing plaintiff on an "opiate withdrawal protocol" with medication-assisted treatment and concluding, "[plaintiff] denies medical or [mental health] issues." *Id.* at 40. In his first week at Marion County Jail, plaintiff submitted three medical request forms, requesting treatment for opioid withdrawals, treatment for injuries on his hands and feet, and medical attention for shoulder pain. *Id.* ¶ 18 & Ex. E, at 41-43. As to his shoulder pain-related request, the nursing note on plaintiff's request indicates he was seen for his pain by medical staff the same day. *Id.*, Ex. E, at 42. Shortly thereafter, defendant Loberg ordered x-rays of plaintiff's left shoulder and clavicle, which were completed on October 11, 2023. Plf. Resp., ECF 36, at 13.[3] The x-rays found that both of plaintiff's shoulders exhibited mild degenerative joint disease, a history of distal clavicle resection, and no acute fracture or dislocation. *Id.*

Throughout his incarceration at Marion County Jail, plaintiff submitted thirteen grievances, eight regarding his medical care.[4] Abraham Decl. ¶ 11. The first grievance relating to his shoulder pain was submitted on October 19, 2023. *Id.*, Ex. C, at 34. The responses to that grievance indicate that plaintiff

---

[2] The exhibits to Abraham's declaration are lodged as a single document, ECF 33-1. Page citations refer to ECF-stamped pagination.

[3] Although plaintiff submitted evidence with his response, he did not identify the legal or factual relevance of such documents. Nonetheless, the Court has reviewed plaintiff's submission in its entirety. The Court cites to the CM/ECF page numbers stamped at the top of each page.

[4] The remaining five grievances pertain to food and lodging issues, *see* Abraham Decl., Ex. C, at 28-32, which are not raised in plaintiff's complaint. To the extent that plaintiff could be deemed to challenge these issues, such a challenge fails for the same lack of administrative exhaustion that bars plaintiff's other claims. *See infra* at 8-9.

3

was "on Gabapentin for pain," that plaintiff's recent shoulder x-ray was normal, that jail staff were seeking plaintiff's previous medical records, and that plaintiff was placed on "the providers list to get evaluated" for his shoulder pain. *Id.*

The next relevant grievance was submitted on November 3, 2023, which states that "the doctor is breaking her oath and code of ethics" by failing to treat "a clear break" visible in an x-ray of plaintiff's shoulder and requests "proper care from someone who specializes in bones." *Id.* at 35. The deputy's response, which was accepted by plaintiff, states that plaintiff's injuries were "documented as chronic" by defendant Loberg on October 31 based on comparison to prior imaging and indicates that plaintiff was on a thrice-daily regimen of gabapentin, which the deputy would seek to increase and supplement with ibuprofen. *Id.*; *see also* Hickok Decl., Ex. 3, at 137[5] (documenting physician's review of plaintiff's injuries on October 31 concluding "all chronic"). The next day, on November 4, defendant Loberg increased plaintiff's gabapentin dose and added ibuprofen. Hickok Decl., Ex. 3, at 145.

On December 3, 2023, plaintiff submitted a grievance asserting that his shoulder was in severe pain, objecting to being "taken off [his] pain pills," and again requesting to see a specialist. Abraham Decl., Ex. C, at 24-26. The responses indicate that, on December 1, plaintiff had been caught "cheek[ing]" (*i.e.*, hiding) his medications and the practice in such situations was to dissolve, crush, or discontinue medications to prevent diversion and misuse. *Id.* at 24 (denying the cheeking charge); *see also* Hickok Decl., Ex. 3, at 111. ("[On December 1], p[atien]t caught cheeking gabapentin . . . Admits to writer he was doing so as well."). While the December 3 grievance was still being resolved, plaintiff filed an additional grievance on December 6, asserting that the lack of medical attention was causing his collarbone to "heal[] incorrect" and complaining of a lack of shoulder brace, physical therapy, and specialized care. Abraham Decl., Ex. C, at 22. The responding deputy placed plaintiff on the doctor's list to address these concerns. *Id.* On December 9, plaintiff saw a nurse practitioner, who determined that plaintiff's "shoulder [injury] is [a]

---

[5] Exhibit 3 to Hickok's declaration is 217 pages divided across documents lodged at ECF 33-3, ECF 33-4, and ECF 33-5. Page citations here refer to the continuous pagination across the three documents stamped in the lower right-hand corner.

chronic condition from injury . . . a year ago" and offered referral to physical therapy for a one-time evaluation, which plaintiff declined. Hickok Decl., Ex. 3, at 137. The nurse practitioner also determined that a brace was not clinically indicated. *Id.*

While his first two December grievances were still being processed, plaintiff submitted a third grievance on December 15. Abraham Decl., Ex. C, at 23. In the grievance, plaintiff described being in severe pain, exacerbated by having to climb down from the top bunk, and requested "a qualified doctor for broken bones," "physical therapy," and "a brace." *Id.* The responses indicate that a request for a lower bunk order would be made to a doctor, that plaintiff's gabapentin was discontinued "due to diversion," but he could be put on Tylenol or ibuprofen, and that plaintiff would be placed on the doctor's list for an appointment to follow-up on the December 9 appointment during which he declined physical therapy. *Id.* On December 19, defendant Loberg approved plaintiff's requested lower bunk restriction. Hickok Decl., Ex. 3, at 143. On January 2, 2024, defendant Loberg requested from Salem Health Orthopedics an "assessment and treatment for [plaintiff's] complaints of pain at left shoulder." *Id.* at 170.

On January 21, 2024, plaintiff filed his sixth medical-related grievance, asserting that he had received no surgery on his shoulder, where "the bone [was] protruding out of skin." Abraham Decl., Ex. C, at 20. Plaintiff was then seen by an outside consultant, Dr. Elkin, at Salem Health Orthopedics on January 21, 2025. Hickok Decl., Ex. 3, at 146, 152. On physical examination, Dr. Elkin found that plaintiff had a reduced range of motion in his left shoulder, that his left shoulder revealed "crepitation," or rattling sounds, "with passive shoulder motion" and that patient's shoulder exhibited "positive impingement signs" and a "positive jerk test." *Id.* at 152. Dr. Elkin also reviewed the x-rays, noting that they showed osteoarthritic changes including decreased joint space and "significant erosive wear," but no "fracture or dislocation." Based on these assessments, Dr. Elkin diagnosed plaintiff with a post-traumatic shoulder injury and osteoarthritic changes. *Id.* at 146, 152. Dr. Elkin concluded that plaintiff would not be a good candidate for surgery but would benefit from a cortisone injunction and continued NSAIDs and gabapentin. *Id.* at 152.

On January 31, defendant Loberg requested that Salem Health Orthopedics provide the cortisone injection for plaintiff; that request was referred to Salem Health Orthopedics on February 13. Hickok Decl., Ex. 3, at 194-95. Plaintiff ultimately received the cortisone injection on April 2, 2024. *Id.* at 193.

On April 25, 2024, plaintiff filed a grievance stating that medical personnel were discriminating against him based on race. Abraham Decl., Ex. C, at 27. In response, the deputy reviewed plaintiff's chart and described the care that plaintiff had received to date, including referrals to outside providers and mental health professionals; plaintiff accepted this as resolution of his grievance. *Id.* On May 5, plaintiff submitted a renewed grievance related to discrimination by medical personnel based on their "decision to deny [him] services." *Id.* at 21. The responses indicate that a physician reviewed plaintiff's chart on April 16, April 19, April 26, and April 30 and "declined to start med[ications] due to multiple issues with diversion of some meds and refusals of other meds." *Id.* On May 29, plaintiff again met with Dr. Elkin, who discussed with plaintiff that his "mechanical symptoms are related to glenohumeral arthritis" and that cortisone injections would provide symptomatic relief; Dr. Elkin's plan further stated that he "would be reserved to proceed" with surgery at the current time, although it "may be viable option in the future," and concluded that "it would be reasonable to maintain with conservative treatment" for the time being. Hickok Decl., Ex. C, at 214.

**B.    Procedural Background**

Plaintiff filed his initial complaint on March 21, 2024. *See generally* Compl., ECF 2. That complaint was dismissed by the Court on May 13, 2024, pursuant to 28 U.S.C. § 1915(e), and plaintiff was granted leave to amend. *See generally* Order of May 13, 2024, ECF 10. Plaintiff filed an amended complaint on May 22, 2024. *See generally* Am. Compl., ECF 11; *see also* Supp. to Am. Compl., ECF 12. Plaintiff's operative complaint asserts one claim under the Eighth Amendment against each of the four defendants. First, plaintiff alleges that County defendants denied him reasonable access to physical and mental healthcare upon admittance to Marion County Jail by placing him in an administrative segregation unit ("ad. seg.") and failing to refer him for physical and mental healthcare. Am. Compl. 3-4, 6. Second, plaintiff contends that, when he ultimately was referred for medical care, defendant Loberg's examination

of his shoulder injury was cursory and failed to adequately treat plaintiff's pain. *Id.* at 4-5. Plaintiff states that the conduct of defendants caused him severe pain and distress and he seeks (1) an order that he remain in Marion County custody until he receives adequate treatment; and (2) $640,000 to compensate him for pain and suffering. *Id.* at 7. Defendants filed a joint answer to plaintiff's amended complaint on July 5, 2024. Ans., ECF 14.

On March 10, 2025, defendants filed motions for summary judgment. *See generally* Loberg Mot. for Summ. J. ("Loberg MSJ"), ECF 30; Wallace, Derkson, & Garibay's Mot. for Summ. J. ("County Defs. MSJ"), ECF 32. On April 7, plaintiff filed a response in opposition to defendants' motions. *See generally* Pl. Resp., ECF 36. County defendants and defendant Loberg filed replies in support of their motions on April 21 and April 22, respectively. *See generally* County Defs. Reply, ECF 37; Loberg Reply, ECF 38. On December 11, plaintiff filed a motion for additional discovery. *See generally* Pl. Mot., ECF 45. Defendant Loberg filed a response in opposition, which County defendants joined. *See generally* Def. Resp., ECF 43; County Defs. Joinder, ECF 47.

## DISCUSSION

### A.    Plaintiff's Motion for Additional Discovery

More than seven months after defendants' motions for summary judgment were fully briefed, and more than nine months after the close of discovery, plaintiff filed a motion for additional discovery, which the Court construes as a request to defer summary judgment under Federal Rule of Civil Procedure 56(d). *See generally* Pl. Mot. In his motion, plaintiff describes the hardships created by transferring from Marion County Jail to a state prison and asks to "add more discovery to strengthen [his] case." *Id.* at 2. Plaintiff does not identify, by affidavit or otherwise, what discovery he seeks, what relevance it would have, nor why it was not already produced. Even giving plaintiff the benefit of the doubt as a self-represented litigant, this falls far short of the requirements of Rule 56(d). *See Tatum*, 441 F.3d at 1100 ("A party requesting a continuance pursuant to [Rule 56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.").

Plaintiff's request for additional discovery also comes too late.  The purpose of Rule 56(d) is "to prevent a party from being 'railroaded' by an opponent's premature summary-judgment motion." *Gonzalez v. Garibay*, No. 09-cv-1080 W (MDD), 2012 WL 12875366, at *4 (S.D. Cal. Aug. 1, 2012) (citing *Celotex Corp.*, 477 U.S. at 326).  Such a concern is abated where, as here, plaintiff had a full opportunity to conduct discovery.  Therefore, plaintiff's request for additional discovery is denied.

**B.    County Defendants' Motion for Summary Judgment**

County defendants' primary argument is that plaintiff's claims are barred by the administrative exhaustion requirement under the Prison Litigation Reform Act ("PLRA").  The Court agrees.  The PLRA provides that an adult-in-custody ("AIC") must exhaust all available remedies prior to filing a lawsuit with respect to prison conditions under Section 1983 or any other federal law.  42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion requires compliance "with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 88 (2006).  This includes pursuing grievances through the highest level of appeal.  *See id.* at 90-91; *see also Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

Failure to exhaust under the PLRA "is an affirmative defense" that "the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The defendant has the initial burden "to prove that there was an available administrative remedy, and that the [AIC] did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).  The burden then shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Here, defendant Loberg and the County defendants asserted failure to exhaust administrative remedies as a defense in their consolidated answer.  Ans. 10 ("All claims brought by Plaintiff that could have been brought while at Marion County Jail are subject to the requirement to the exhaustion of administrative remedies requirement under the PLRA and as a result those claims are barred.").  Defendants have also proffered evidence that a grievance system was an available administrative remedy to address plaintiff's request for medical and psychiatric care.  *See* Abraham Decl. ¶¶ 6-10 & Ex. B at 16.  Plaintiff

does not dispute that he was made aware of and had access to the grievance process outlined in the AIC Handbook. *See id.* ¶¶ 7-8; *id.*, Ex. C (collecting thirteen grievances pursued by plaintiff, each of which instructs plaintiff to "[f]ollow the rules in the AIC Handbook regarding the facility's grievance procedures"). The AIC Handbook provides a sequence of steps one must follow under the grievance procedure. First, the AIC must attempt to verbally resolve their problem with a deputy. *Id.*, Ex. B at 16. Then, the AIC must file a grievance, to which the employee involved is required to respond within seven days. *Id.* If the AIC is unsatisfied with that response, they must then submit a written appeal to the employee's supervisor. *Id.* If the AIC is not satisfied with the supervisor's response, they must submit a written appeal to the lieutenant. *Id.* If the AIC is then unsatisfied with the lieutenant's response, they must complete the final step of the grievance process. This step is described as follows:

> If you are not satisfied with the response from the lieutenant, you will have 7 calendar days from the date of receipt to submit a written request for review to the Jail Commander or their designee. This request must be in writing, and on a separate document from the original grievance. The written request for appeal must include a copy of the grievance you are requesting an appeal on. A copy of the grievance and the written request for appeal will be forwarded to the Jail Commander for review.

*Id.* Defendants offer a sworn statement by a lieutenant in the Marion County Jail that "[n]one of [plaintiff's] grievances were appealed through the end of the administrative remedies under the Jail's grievance process." *Id.* ¶ 13. Plaintiff does not dispute this, nor can the Court locate any contradictory evidence in the record. Therefore, because plaintiff failed to exhaust the administrative process for his grievances, summary judgment is appropriate as to County defendants.[6]

**C.    Defendant Loberg's Motion for Summary Judgment**

Plaintiff's claims against defendant Loberg are also barred pursuant to 42 U.S.C. § 1997e(a). Defendant Loberg failed to argue exhaustion in his motion for summary judgment, but generally a court

---

[6] Issues related to mental healthcare, foot injuries, and administrative segregation are mentioned in plaintiff's complaint and referenced in the documents plaintiff filed in opposition to summary judgment but not well addressed in any of plaintiff's filings. Nonetheless, to the extent such claims are otherwise cognizable, because plaintiff does not dispute that he failed to pursue any of his thirteen grievances to final resolution, the PLRA's administrative exhaustion requirement bars these claims as well.

may grant summary judgment to one party based on evidence supplied by another party. *Aluminum Co. of Am. v. Nat'l Marine Fisheries Serv.*, 92 F.3d 902, 907 (9th Cir. 1996); *see also NL Indus., Inc. v. GHR Energy Corp.*, 940 F.2d 957, 965 (5th Cir. 1991) (holding that Rule 56 "permits a court to grant summary judgment in favor of a party that did not request it" as long as the adverse party is on notice of the possibility). Further, although defendant Loberg's failure to raise administrative exhaustion could constitute waiver of the argument, the Court has "discretion to reach a waived issue . . . [if] 'the issue presented is purely one of law and . . . the pertinent record has been fully developed.'" *McCoy v. Clark*, 766 F. App'x 521, 524 (9th Cir. 2019) (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)). Here, defendant Loberg timely asserted administrative exhaustion as a defense in the joint answer, the issue of exhaustion is purely one of law, and the record related to exhaustion is complete. *See id.* ("[S]ummary judgment based on exhaustion is a purely legal issue. . . ."). Therefore, the Court declines to find the issue waived as to defendant Loberg. Plaintiff did not exhaust his administrative remedies with respect to defendant Loberg any more than he exhausted them with respect to the County defendants. Abraham Decl. ¶¶ 12-13 (attesting that plaintiff filed thirteen grievances total during his incarceration at Marion County Jail and "[n]one of these grievances were appealed through to the end of the administrative remedies under the Jail's grievance process").

Even if defendant Loberg waived administrative exhaustion as a defense, defendant Loberg has established that there is no genuine dispute of material fact that would preclude summary judgment on the merits. To prevail on a claim for unconstitutionally inadequate medical care, a plaintiff must show that a defendant acted with "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff demonstrates such deliberate indifference by showing (1) "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and (2) "harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see also Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) ("Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."). "In deciding whether there has been deliberate indifference to an

10

inmate's serious medical needs, [a court] need not defer to the judgment of prison doctors or administrators." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). However, inadvertent failures to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain a claim under Section 1983. *See Estelle*, 429 U.S. at 105-07; *Hutchinson*, 838 F.2d at 394.

Here, defendant Loberg repeatedly reviewed and took prompt action on plaintiff's requests and grievances. *See, e.g.*, Hickok Decl., Ex. 3, at 137 (documenting review of plaintiff's imaging); *id.* at 143 (approving plaintiff's request for a lower-bunk restriction); *id.* at 136 (requesting outside consultation). Defendant Loberg diligently responded to plaintiff's requests for medication and initially increased plaintiff's dose of gabapentin based on his reports of severe pain, only discontinuing the medication after plaintiff was caught diverting it. *See id*. at 145 (indicating that defendant Loberg increased plaintiff's gabapentin dose and added ibuprofen at plaintiff's request); Abraham Decl., Ex. C, at 21 (declining, after multiple chart reviews, to re-prescribe gabapentin "due to multiple issues with diversion of some meds and refusals of other meds"). In addition to treating plaintiff himself, defendant Loberg also secured an outside consultation with a specialist and ensured plaintiff received treatment for his symptoms from that specialist. *See* Hickok Decl., Ex. 3, at 170 (requesting an "assessment and treatment for [plaintiff's] complaints of pain at left shoulder" from specialists at Salem Health Orthopedics); *id.* at 194-95 (referring plaintiff to Salem Health Orthopedics for a cortisone injection to manage pain). This is substantial evidence that plaintiff was provided more than adequate care. *See Vazquez v. Conanan*, No. 21-16731, 2023 WL 2624782, at *2 (9th Cir. Mar. 23, 2023) (affirming summary judgment for defendants where they "conducted numerous physical exams reasonably quickly after [the plaintiff] requested them, had interviews with [the plaintiff] to ensure he received fair treatment, made referrals for specialized care, and treated his injuries according to acceptable industry standards").

Plaintiff does not dispute this evidence, nor does he offer evidence of substandard—nonetheless deliberately indifferent—care. Instead, plaintiff repeatedly emphasizes that he has "no history of surgery," even though his injury was "clear and eviden[t] to the naked eye," and argues that "every time [he] was

seen nothing was ever done." Pl. Resp. 2 (cleaned up). Plaintiff appears to argue that he should have been given surgery for his shoulder, while his treating physicians believed cortisone injections would be more appropriate; this amounts not to deliberate indifference, but a simple disagreement with defendant Loberg's medical judgment. *See White v. Lee*, 510 F. App'x 640, 642 (9th Cir. 2013) ("[A] mere difference of medical opinion regarding the ideal course of treatment . . . is 'insufficient, as a matter of law, to establish deliberate indifference.'" (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)). Notably, the outside specialist at Salem Health Orthopedics, rather than defendant Loberg, made the determination that plaintiff would not be a good candidate for surgery and would be better served by cortisone injections. Hickok Decl., Ex. 3, at 146 (assessment by outside specialist recommending "shoulder cortisone injection" and "continue[d] NSAIDs"); *id.* at 214 (renewed conclusion by outside specialist that plaintiff's symptoms were due to arthritis, which would be best treated by cortisone injections rather than surgery). Therefore, summary judgment is appropriate even if defendant Loberg waived his administrative exhaustion defense.

## CONCLUSION

For the reasons stated herein, plaintiff's motion for additional discovery, ECF 45, is DENIED, and defendants' motions for summary judgment, ECF 30 and 32, are GRANTED. Judgment shall follow.

IT IS SO ORDERED.

DATED this 18th day of March, 2026.

Adrienne Nelson
United States District Judge